**UNITED STATES of America, Plaintiff,**

v.

**John Daniel RAFFERTY, Defendant.**

**Crim. No. 88–01508–01.**

United States District Court,
D. Hawaii.

May 5, 1989.

Daniel A. Bent, U.S. Atty., and Michael K. Kawahara, Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff.

Peter C. Wolff, Hart & Wolff, Honolulu, Hawaii, for defendant.

## ORDER REGARDING ADJUSTMENTS TO SENTENCING GUIDELINES' OFFENSE LEVEL

DAVID A. EZRA, District Judge.

### I. BACKGROUND

John Daniel Rafferty ("defendant") was charged with possession and possession with the intent to distribute marijuana in a two count indictment filed October 19, 1988. Defendant pled guilty to both counts on December 14, 1988 and appeared for sentencing on April 25, 1989. The offenses occurred after November 1, 1987, therefore, the Sentencing Reform Act of 1984 is applicable.

The Presentence Investigation Report concluded that defendant had provided false information to arresting officers relative to his correct name, address and telephone number and had testified untruthfully at a detention hearing held October 21, 1988. Based upon this conduct, it has been recommended that defendant be given a two level upward adjustment of his "offense level" for purposes of sentencing.[1] Defendant contends the false information given to the arresting officers cannot be used as a basis for a finding of "obstruction of justice" because that information was elicited after defendant requested presence of counsel. Defendant further claims the false testimony given at the detention hearing was not "willful" as required by the sentencing guidelines.

Defendant also submits he is entitled to a two level *decrease* for acceptance of responsibility pursuant to § 3E1.1.[2]

### II. OBSTRUCTION OF JUSTICE

#### A. *False post-arrest information*

Following defendant's arrest at the Honolulu International Airport, he was given his *Miranda* warning and questioned by Drug Enforcement Administration agents. As noted above, defendant refused to answer the agents' questions until he was able to speak with legal counsel. Although questioning relating to defendant's alleged criminal conduct ceased, the agents did ask defendant for his name, address and telephone number. He provided them with an incorrect middle name and an incorrect address and telephone number.

Defendant contends the agents' questions and his responses constitute "interrogation" and were elicited in violation of his asserted constitutional rights and, therefore, cannot be used against him. It is unclear to this court whether defendant is basing his argument solely on his fifth amendment right against self-incrimination or whether he also relies upon his sixth amendment right to assistance of counsel. "The definitions of 'interrogation' under

---

1. § 3C1.1 of the guidelines provides:
 If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level from Chapter Two by 2 levels.

2. § 3E1.1 provides:
 (a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.
 (b) A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial.
 (c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

the Fifth and Sixth Amendments ... are not necessarily interchangeable, since the policies underlying the two constitutional protections are quite distinct." (Citation omitted.) *Rhode Island v. Innis,* 446 U.S. 291, 300, n. 4, 100 S.Ct. 1682, 1689, n. 4, 64 L.Ed.2d 297 (1980). Therefore, the court will discuss the applicability of both constitutional amendments to the facts of this case.

### 1. *Fifth Amendment*

Defendant cites *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), as support for his position. The right to counsel at issue in *Edwards* was based on the fifth and fourteenth amendments as interpreted by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Edwards,* 451 U.S. at 480, 101 S.Ct. at 1882. In that case, the Supreme Court discussed the applicability of *Miranda* to post-*Miranda* statements holding that "[i]f the accused indicates that he wishes to remain silent, 'the interrogation must cease.' If he requests counsel, 'the interrogation must cease until an attorney is present.'" 451 U.S. at 482, 101 S.Ct. at 1883 (*citing Miranda,* 384 U.S. at 474, 86 S.Ct. at 1627–28).

In the *Innis* opinion, *supra,* the Court defined "interrogation" under the fifth amendment as express questioning or its functional equivalent which the police know is likely to elicit an incriminating response. 446 U.S. at 300–01, 100 S.Ct. at 1689. Here the agents sought only the name, address and telephone number of the defendant. This discreet and specific background information requested by the agents and given by defendant does not constitute "interrogation" under this definition. *United States v. Perez,* 776 F.2d 797, 799 (9th Cir.1985) ("[r]outine gathering of background biographical data does not constitute interrogation sufficient to trigger constitutional protections"); *United States v. Booth,* 669 F.2d 1231, 1238 (9th Cir.1981) ("[o]rdinarily, the routine gathering of background biographical data will not constitute interrogation").

### 2. *Sixth Amendment*

Under the sixth amendment, agents are prohibited from *deliberately* eliciting *incriminating* information from the defendant in the absence of counsel. *Massiah v. United States,* 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964); *Brewer v. Williams,* 430 U.S. 387, 388–89, 97 S.Ct. 1232, 1234–35, 51 L.Ed.2d 424 (1977); *United States v. Bernal,* 719 F.2d 1475, 1478 (9th Cir.1983).

The biographical information sought by the agents in this case was not *designed* to elicit *incriminating* information from defendant. Rather, it was routine information requested of all arrestees. Under these circumstances, this type of information is not "interrogation" prohibited by the sixth amendment. *Massiah, supra; Brewer, supra; Bernal, supra.*

Therefore, the constitutional rights of defendant have not been violated under either the fifth or sixth amendment, and his responses to the agents' questions may be utilized in the guideline sentencing proceeding.

### B. *False testimony in the detention hearing*

At the detention hearing held October 21, 1988, defendant testified untruthfully regarding the identities of John Harrington and John Sullivan. In fact, these were aliases used by defendant. Defendant contends he was "terrified" and "extremely anxious and upset" with "virtually no sleep in days" prior to the hearing. Added to these conditions, defendant contends he was worried about his ailing mother and had a "strong desire" to be released on bail so he could be with her. Defendant's Memorandum Re Adjustments To Offense Level and Departures From Sentencing Guidelines, ¶¶ 2–3, filed April 24, 1989. Under these circumstances, defendant claims his false testimony was not "willful" as required by § 3C1.1 of the sentencing guidelines.

Defendant has admitted that the testimony referred to above was in fact false. This false information regarding John Harrington and John Sullivan was in response

to questions regarding defendant's possession of checkbooks, credit cards, telephone long-distance credit cards and an airline ticket in those names. Defendant's responses do not appear to have been "blurted out" in a moment of emotion or stress. Rather, they were considered and extensive. *See* Transcript of Proceedings at 20–26, dated October 21, 1988.

It is the finding of the court that the false testimony given by defendant at the detention hearing may be used to determine the applicability of § 3C1.1 of the sentencing guidelines and the imposition of a two level increase in the offense level.

### III. ACCEPTANCE OF RESPONSIBILITY

 Application Note 4 of the Commentary to § 3E1.1 states as follows:

An adjustment under this section is not warranted where a defendant perjures himself, suborns perjury, or otherwise obstructs the trial or the administration of justice (*see* § 3C1.1), *regardless of other factors.* (Emphasis added.)

The language and effect of this Application Note is clear. And, although the commentary to an individual guideline does not have the force of the guideline itself, it serves to interpret or explain that guideline. Further, "[s]uch commentary is to be treated as the legal equivalent of a policy statement." Sentencing Guidelines § 1B1.7. The commentary to § 1B1.7 goes further. In part, it reads:

In stating that failure to follow certain commentary "could constitute an incorrect application of the guidelines," the Commission simply means that in seeking to understand the meaning of the guidelines courts likely will look to the commentary for guidance as an indication of the intent of those who wrote them. In such instances, the courts will treat the commentary much like legislative history or other legal material that helps determine the intent of a drafter.

The effect of this Application Note is unequivocal. If a defendant is given a two level increase for obstruction of justice under § 3C1.1, he cannot be granted a two level decrease for acceptance of responsibility. Defendant submits that this "inequity" cannot be the intended result of the drafters of the sentencing guidelines.

When the language of a statute is clearly stated, its terms should be "read and applied literally." *Adams v. Bowen*, 872 F.2d 926, 928 (9th Cir.1989). Here the intended result of the drafters of the guidelines is apparent from the face of the statute and compels the application indicated.

Alternatively, defendant contends the intent or policy of the Guideline Commission is either unconstitutional or clearly erroneous and, in either event, should not be followed. This issue, however, is not yet ripe for decision.

As noted in *Standard Alaska Production v. Schaible*, 874 F.2d 624, 627 (9th Cir.1989):

Ripeness requires an evaluation of "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." (Citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 [87 S.Ct. 1507, 1515, 18 L.Ed.2d 681] (1967)). A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final. *Friedman Brothers Investment Co. v. Lewis*, 676 F.2d 1317, 1319 (9th Cir.1982).

Defendant is entitled to a hearing on the issues of obstruction of justice and acceptance of responsibility. Only after these issues have been resolved will this court be able to determine whether a "ripe" constitutional issue is before it.

### IV. CONCLUSION

Based upon the foregoing, the court finds that both the false information given by defendant to the arresting agents and the false testimony given at the detention hearing may be used in determining defendant's offense level in computing the applicable sentencing guidelines. The court further finds that, under the terms of the sentencing guidelines, if defendant is found to have committed an obstruction of justice

under § 3C1.1, he is not entitled to a two level decrease for acceptance of responsibility under § 3E1.1.

IT IS SO ORDERED.