NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 4 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>RODRIGO ALVAREZ-QUINONEZ,<br><br>Defendant-Appellant. | No.    22-30161<br><br>D.C. No.<br>2:20-cr-00093-RAJ-2<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted November 14, 2023
Seattle, Washington

Before: McKEOWN and GOULD, Circuit Judges, and BAKER,[**] International
Trade Judge.

Rodrigo Alvarez-Quinonez appeals his conviction for conspiracy to distribute

controlled substances and for possession of fentanyl with intent to distribute. He

argues that the district court erred under Federal Rule of Evidence 901 by concluding

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable M. Miller Baker, Judge for the United States Court of
International Trade, sitting by designation.

that the lead DEA case agent established a proper foundation to identify and admit statements in transcripts of intercepted phone calls and text messages. He further argues that the district court erred under Federal Rule of Evidence 701 by allowing the agent to give lay opinion testimony identifying Alvarez-Quinonez as the user of one of the intercepted phones. We have appellate jurisdiction under 28 U.S.C. § 1291 and we affirm.

We apply *de novo* review to a district court's construction of the Federal Rules of Evidence. *United States v. Seminole*, 865 F.3d 1150, 1152 (9th Cir. 2017). We review a district court's finding that evidence had a proper foundation for abuse of discretion. *United States v. Pang*, 362 F.3d 1187, 1192–93 (9th Cir. 2004). We similarly review a district court's decision to admit lay opinion testimony for abuse of discretion. *United States v. Gadson*, 763 F.3d 1189, 1209 (9th Cir. 2014).

1. Alvarez-Quinonez contends that the lead DEA case agent could not authenticate the transcripts because the agent was not familiar with his voice. The government responds that Federal Rule of Evidence 901 permits authentication of transcripts of audio recordings not only through familiarity with a speaker's voice, *see* Fed. R. Evid. 901(b)(5), but also through other "evidence sufficient to support a finding that the item is what the proponent claims it is," Fed. R. Evid. 901(a). *Cf. Gadson*, 763 F.3d at 1204 ("Where the government offers a tape recording of the defendant's voice, it must also make a prima facie case that the voice on the tape is

in fact the defendant's, whether by means of a witness who recognizes the voice *or by other extrinsic evidence*." (emphasis added)).

Rule 901(a) "allows the district court to admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *Vatyan v. Mukasey*, 508 F.3d 1179, 1184 (9th Cir. 2007). "Once the offering party meets this burden, 'the probative value of the evidence is a matter for the jury.' " *United States v. Ortiz*, 776 F.3d 1042, 1045 (9th Cir. 2015) (quoting *United States v. Workinger*, 90 F.3d 1409, 1415 (9th Cir. 1996)).

Alvarez-Quinonez admits that he "identified himself on January 22, 2020, as the holder of [the] target telephone" during a phone call to associates in Mexico in which he stated that he was a passenger in a vehicle that was stopped and searched. His self-identification, combined with the totality of the circumstances including the matching of phone call transcripts with physical surveillance evidence, was sufficient to clear the "low" threshold imposed by Rule 901, *id*. at 1044, so the district court did not abuse its discretion in allowing the agent to authenticate the transcripts.

2. Alvarez-Quinonez asserts that the lead DEA case agent could not properly give lay opinion testimony identifying him as the speaker on the transcribed phone calls because the agent was not familiar with his voice. But as the government points out, this ignores that information gleaned from the investigation—information with

which the agent was personally familiar—indicated that Alvarez-Quinonez was the user of the phone in question.

Alvarez-Quinonez further contends that the lead DEA case agent could not rely on the totality of the investigation to form his opinion because the agent did not personally observe all aspects of that investigation. A law enforcement lay opinion witness, however, may use his direct knowledge of the investigation, including facts he learned as part of the investigation, in interpreting the evidence. *United States v. Freeman*, 498 F.3d 893, 904–05 (9th Cir. 2007). By its very nature, lay opinion testimony is based "on the witness's own understanding, including a wealth of personal information, experience, and education, that cannot be placed before the jury. If witnesses cannot draw on their experience and knowledge, they are effectively limited to presenting factual information. . . . Rule 701 does not impose such a limitation." *Gadson*, 763 F.3d at 1208. "[A]n investigator who has accumulated months or even years of experience with the events, places, and individuals involved in an investigation necessarily draws on that knowledge when testifying; indeed, it is those out-of-court experiences that make the witness's testimony helpful to the jury." *Id.* at 1209.

We therefore find no error in the district court's decision to allow the lead DEA case agent to give lay opinion testimony identifying Alvarez-Quinonez as the speaker on the transcribed phone calls based on the agent's overall knowledge of the

investigation and the facts gleaned therefrom. Finally, as the government points out, the significant testimony about code words used in drug transactions came not from the lead DEA case agent, but rather from another agent who was admitted as an *expert* witness to discuss drug terminology and code words, drug distribution quantities, drug trafficking operations, and the use of cell phones in such operations. Thus, Alvarez-Quinonez's argument that the agent impermissibly relied upon specialized knowledge is unavailing.

**AFFIRMED.**